# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD R. EIDELMAN, et al | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | NO. 10-2578 |
| | : | |
| STATE FARM FIRE AND | : | |
| CASUALTY COMPANY | : | |
| Defendant | : | |

## **M E M O R A N D U M**

**STENGEL, J.**                                                              **January 19, 2011**

      This case involves the coverage to which plaintiffs are entitled under a business loss insurance policy administered by defendant State Farm Fire & Casualty Company ("State Farm"). Following a conference pursuant to Rule 16 of the Federal Rules of Civil Procedure, this Court issued a scheduling order requiring plaintiffs to file a motion for judgment on the pleadings. Plaintiffs, despite having conducted no discovery in this matter and admitting that the issue before the Court is purely a matter of contractual interpretation, have filed a motion for summary judgment with a supporting affidavit from plaintiff Edward Eidelman. State Farm filed both a response to plaintiffs' motion for summary judgment and a separate motion for judgment on the pleadings. I will deny the plaintiffs' motion for summary judgment and grant State Farm's motion for judgment on the pleadings.

I.   **FACTS**[1]

Plaintiffs filed a declaratory judgment complaint in the Lehigh County Court of Common Pleas on April 29, 2010. State Farm properly removed the action to this court on the basis of diversity jurisdiction.[2] Plaintiffs are three attorneys acting as partners in

---

[1] The following facts are drawn from the plaintiffs' complaint.

[2] Plaintiffs originally filed their complaint in Pennsylvania court seeking relief under the Pennsylvania Declaratory Judgment Act, which provides that:
> Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

42 Pa.C.S.A. § 7532. However, because an action for declaratory judgment is procedural in nature and purpose, a federal court exercising diversity jurisdiction over such an action must follow federal procedural rules. See Munich Welding, Inc. v. Great Am. Ins. Co., 415 F. Supp. 2d 571, 574 (W.D.Pa. 2006) (citation omitted). The federal Declaratory Judgment Act provides that:
> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. Under both the Pennsylvania and federal declaratory judgment provisions, Courts have the discretion not to hear declaratory judgment actions even when the suit otherwise satisfies the requirements of subject matter jurisdiction. See Wilton v. Seven Falls Co., 515 U.S. 277, 282, 115 S.Ct. 2137, 2140, 132 L. Ed. 2d 214 (1995); Osram Sylvania Prods., Inc. v. Comsup Commodities, Inc., 845 A.2d 846, 848 (Pa. Super. 2004). The Third Circuit has cautioned that in cases involving questions of insurance coverage, courts considering whether to exercise jurisdiction under Section 2201 should consider (1) a general policy of restraint when the same issues are pending in state court; (2) the conflict between an insurer's duty to defend in state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion; (3) avoidance of duplicative litigation; and (4) the presence of unsettled questions of state law. See State Auto Ins. Cos. v. Summy, 234 F.3d 131, 134 (3d Cir. 2000). Because the plaintiffs, who originally filed this action in state court, have not requested that the Court decline to exercise jurisdiction, because there are to this Court's knowledge no parallel

1248 Hamilton Street Realty Partnership, which owns the building located at the same address in Allentown, Pennsylvania. All three are also partners in Eidelman Crossley, LLC. Following its purchase of the building located at 1248 Hamilton Street, the Realty Partnership leased the building to two law firm tenants, Eidelman Crossley, LLC, and Eidelman & Associates. Eidelman Crossley, LLC pays professional fees to Edward Eidelman P.C. and Mark D. Crossley P.C., and each of these P.C.'s pays a salary to Edward R. Eidelman, Esq., and Mark D. Crossley, Esq.

The Realty Partnership entered into an insurance contract with State Farm in July of 2008. Prior to moving its offices to 1248 Hamilton Street, Eidelman Crossley, LLC, Edward Eidelman, P.C., and Mark D. Crossley, P.C. entered into an identical business insurance policy with State Farm. At some point during the evening between November 9 and November 10, 2009, a fire was started at 1248 Hamilton Street which destroyed the interior of the building and the vast majority of the contents of the building, which were owned by Eidelman Crossley, LLC, and Eidelman & Associates. On or about December 1, 2009, Eidelman Crossley, P.C. and Eidelman & Associates entered into a lease for temporary space at 1132 Hamilton Street, Suite 301. At issue here is the construction of plaintiffs' business insurance policy with State Farm. The parties have no disagreement over the language of the policy in effect at the time of the fire, and rather dispute the extent to which State Farm is required to insure losses arising from the destruction of the

---

state court proceedings presenting the same issue, and because there are no unsettled issues of state law presented, I find that it is proper to exercise jurisdiction in this case.

building and resulting business losses to plaintiffs.

The policy provides that State Farm will insure the plaintiffs for "actual loss" of income for twelve months from the date of the physical loss to the insured property. See Policy, "Declarations Page." The nature of the loss of income coverage is set forth in the body of the policy, in which State Farm agrees to pay:

> 1. for the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by accidental direct physical loss to property at the described premises . . . caused by an insured loss;
> 2. any necessary "extra expense" to avoid or minimize the suspension of business and to continue "operations":
>    a. at the described premises; or
>    b. at replacement premises or at temporary locations, including relocation expenses and costs to equip and operate the replacement or temporary locations;
>    to the extent it reduces the amount of the "business income" loss that otherwise would have been payable under this coverage caused by an insurance loss.
> 3. any necessary "extra expense" to minimize the suspension of business if you cannot continue "operations" to the extent it reduces the amount of the "business income" loss that otherwise would have been payable under this coverage caused by an insured loss;
> . . .

Policy, 4. The policy defines the terms used in the income loss portion of the policy.

- "Business income" is defined as "the net income (net profit or loss before income taxes) that would have been earned or incurred and continuing normal operating expenses, including payroll, incurred during the 'period of restoration.'" Id.

- "'Operations' means the type of your business activities occurring at the premises[.]" Id. at 5.

- The "period of restoration" is defined as "the period of time that: (a) begins with the date of accidental direct physical loss caused by an insured loss at the described premises; and (b) ends on the date when the property at the described premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality." Id.

Finally, the policy includes a "loss determination" portion, which provides that the amount of an insured's "business income" loss will be determined based on:

> a. the net income of the business before the accidental direct physical loss occurred;
> b. the likely net income of the business if no loss occurred;
> c. the operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the accidental direct physical loss; and
> d. other relevant sources of information, including:
>    1. your financial records and accounting procedures;
>    2. bills, invoices and other vouchers;
>    3. deeds, liens or contracts.

Policy, 5. In other words, State Farm's obligation under the policy, construed with the policy's relevant definitions, is to pay:

> for the actual loss of [net income . . . that would have been earned or incurred and continuing normal operating expenses, including payroll] you sustain due to the necessary suspension of your [normal business activities] during the period that [(a) begins with the date of accidental direct physical loss caused by an insured loss at the described premises; and (b) ends on the date when the property at the described premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality] for up to 12 consecutive months after the date of accidental direct physical loss.

Policy (Loss Income Section with definitions for "business income," "operations," and

"period of restoration " inserted).

Plaintiffs' complaint contains two counts seeking declaratory judgment. Count I, filed by 1248 Hamilton Street Realty Partnership against State Farm, seeks an order that Plaintiffs' basic building coverage under the above policy is $666,100.00 plus inflation coverage. Complaint ¶ 29. Because plaintiffs make no mention of this claim in their motion for summary judgment and have not filed a response to the motion for judgment on the pleadings filed by State Farm, in which State Farm requests that Count I be dismissed, I will dismiss it without further analysis. Count II, filed by Eidelman Crossley, LLC, Edward Eidelman, P.C., and Mark D. Crossley, P.C. against State Farm, seeks an order from this Court that:

> Defendant is obligated to pay Eidelman Crossley, LLC its continuing normal operating expenses, including payroll of all Eidelman Crossley, LLC, Edward R. Eidelman, PC and Mark D. Crossley, PC employees from November 10, 2009 until such time as the property at 1248 Hamilton Street is repaired, rebuilt or replaced with reasonable speed and similar quality to its existence on November 9, 2009 prior to the fire in question.

Complaint ¶ 32.

## II. STANDARD OF REVIEW

Because the plaintiffs were instructed to file a motion for judgment on the pleadings due to the fact that their complaint was filed as a declaratory judgment action, I will deny the plaintiffs' motion for summary judgment and rule on the motion for

judgment on the pleadings properly filed by State Farm.

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings. In order to prevail, the movant must show that "no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (citing Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir.1988)). In reviewing a 12(c) motion, the court must view the facts in the pleadings and the inferences drawn therefrom in the light most favorable to the non-moving party. Id.

## III. DISCUSSION

Neither party disputes that Pennsylvania law controls in construing the language of the Eidelman insurance policy.[3] "Under Pennsylvania law, the interpretation of an insurance contract is a matter of law for the court." Lexington Ins. Co. v. W. Penn. Hosp., 423 F.3d 318, 323 (3d Cir. 2005) (citing Madison Constr. Co. v. Harleysville Mut. Ins. Co., 557 Pa. 595, 735 A.2d 100, 106 (1999)). "The goal of interpreting an insurance policy . . . is to determine the intent of the parties." Mercersburg College, 458 F.3d at 171. This task begins with the language of the policy. Id. Where the terms of a

---

[3] Where jurisdiction is based on diversity of citizenship, the reviewing court applies the law of the state where the District Court sits. Regents of Mercersburg College v. Republic Franklin Ins. Co., 458 F.3d 159, 163 (3d Cir. 2006). Under Pennsylvania choice of law rules, an insurance contract is governed by the law of the state where it was made. Id. The parties do not appear to dispute that the Eidelman policy was "made" in Pennsylvania.

-7-

provision are clear and unambiguous, they must be given their plain and ordinary meaning. St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991). Where terms are ambiguous, they must be construed in favor of the insured and against the insurer, as drafter of the agreement. Lexington Insurance, 423 F.3d at 323. "Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Id. (citing Madison Construction, 735 A.2d at 106). The meaning of any term in a policy will necessarily be informed by what surrounds it, so courts must interpret policy provisions with reference to the entire document. See Capitol Bus Co. v. Blue Bird Coach Lines, Inc., 478 F.2d 556, 560 (3d Cir. 1973) ("A contract is to be considered as a whole, and, if possible, all its provisions should be given effect[.]"). Moreover, "a contract should be construed so as to give effect to its general purpose." Id.

An insurance policy for business interruption "is intended to return to the insured the amount of profit it would have earned had the event insured against not intervened." Berkeley Inn, Inc. v. Centennial Ins. Co., 422 A.2d 1078, 1080, 282 Pa.Super. 207, 210 (Pa. Super. 1980); Pennbarr Corp. v. Ins. Co. Of North Am., 976 F.2d 145, 154 (3d Cir. 1992) ("[T]he purpose of business interruption insurance [is] to return to the insured that amount of profit that would have been earned during the period of interruption had a casualty not occurred."). When making a claim for business loss under a business interruption policy, the insured claimant must provide (1) evidence of a necessary

suspension of its operations, and (2) proof of an actual loss of business income during the period of restoration. See TJS Brokerage & Co., Inc. v. Hartford Cas. Ins. Co., No. 2755, 2002 WL 826484 at *6 (Pa. Com. Pl. Apr. 22, 2002). Courts have interpreted the term "necessary suspension" in such a policy to mean "a total cessation of business activity." Id. A claimant shows "actual loss" where the net profits of its business prior to the loss are greater than the net profits of its business after the loss. See Berkeley Inn, 422 A.2d at 1080, 282 Pa.Super. at 211 ("In assessing liability for a business interruption loss, the previous experience of the business before the fire as well as its probable future experience thereafter must be considered, and as a prerequisite to recovery, the claimant must show an actual monetary loss."). In other words,

> To recover under the business interruption policy . . . [the claimant] must prove that it sustained [covered damage], that there was an interruption to the business ("suspension of operations") which was caused by the property damage, and that there was an actual loss of business income during the period of time necessary to restore the business and that the loss of income was caused by the interruption of the business and not by some other factor or factors.

Dictiomatic, Inc. v. United States Fidelity & Guaranty Co., 958 F. Supp. 594, 602 (S.D.Fl. 1997).

Plaintiffs claim they are entitled to coverage due to a necessary suspension of operations as a result of the destruction of the premises at 1248 Hamilton Street. They claim there is sufficient evidence of a "necessary suspension of operations" such that they are entitled to full business income loss coverage for the period of restoration. They state,

"State Farm's position appears to be that there is a distinction between total suspension and partial suspension, not as an event but as a continuing condition. In other words, they appear to state that once Eidelman Crossley was able to start operating again, the duty to pay for net income loss and continuing normal operating expenses ends." Pl.'s Mot. For Summary J., 8. Plaintiffs claim that there has been a total suspension of operations at their insured place of business and that, although they have begun work at a temporary place of business, they are entitled to full business loss coverage, including payroll expenses and continuing normal operating expenses as part of their actual loss.

State Farm frames the inquiry differently, claiming that it is required to pay "the difference between what Plaintiffs would have earned if the loss had not occurred and what Plaintiffs actually earned following the loss [and] any 'extra expense' that exceeds the normal operating expenses." Def.'s Resp. To Pls.'s Mot. For Summary J., 3. Phrased differently, State Farm argues:

> Although it is conceded that Plaintiffs suffered a "necessary suspension of operations", the dispute is whether Plaintiffs are entitled to business income totaling 100% of business income received prior to the loss, as if Plaintiffs ceased their entire operations for the entire period of restoration. Plaintiffs do not take into account the income which has been earned since the resumption of business operations.

Id. at 9. State Farm therefore argues that the plaintiffs' entitlement to actual loss includes actual loss of business income and actual loss of operating expenses - meaning, any amounts plaintiffs earned during the period of restoration have to be offset from losses.

In reviewing a District Court's grant of summary judgment in favor of an insurer

following its refusal to award the insured claimant lost earnings, the Third Circuit addressed whether the claimant's resumption of operations out of a temporary location necessarily indicated that business operations had not been suspended under the terms of its business interruption policy. See Am. Med. Imaging Corp. v. St. Paul Fire & Marine Ins. Co., 949 F.2d 690 (3d Cir. 1991). It reasoned that, in light of the claimant's evidence that it operated at a reduced capacity out of its temporary location and earned less from its business activities out of the temporary location than it would have out of its normal location, the claimant had demonstrated a genuine issue of fact whether its loss was covered under the policy. Id. at 692. Although the claimant had mitigated its damages by conducting business at a scaled-down level at an alternative site, the insurer was still obligated to "indemnify [the claimant] for any lost earnings or extra expenses arising from such suspensions during the period up to the date upon which [it] was able to resume its normal business operations at [the covered location]." Id. In other words, it found, "[the insurer's] obligation to indemnify continues until the resumption of 'normal business operations.' This necessarily implies that the obligation to indemnify can arise while business continues, albeit at a less than normal level." Id. at 693.

As best I can construe plaintiffs' complaint, they seek an order from this Court that they are to receive full coverage for business losses, including the salaries of their attorneys, as if they have ceased doing business entirely since the fire. This is despite the fact that they have leased an alternative location for their business and are operating out

of that location until they resume normal business operations at 1248 Hamilton Street. To accept this interpretation would nullify both the clear intent of the policy, which requires them to mitigate their losses and to demonstrate business loss with relevant evidence, and the broader purpose of business interruption insurance, which is to ensure that insured claimants receive the benefits their business would have imparted absent the interruption; not to put them in a better position than they would have been absent the interruption. See American Medical, 949 F.2d at 692-93; Dictiomatic, 958 F.Supp. at 603-04.

Defendants seek an order from this court that the Plaintiffs are entitled to payment for actual loss of business income based on the difference between what they would have earned if the fire had not taken place and what their actual earnings were after the November 2009 fire. State Farm has represented that it refuses to cover attorney salaries and operating expenses that were not an actual loss, "i.e. that did not increase as a result of the loss or that the benefit of which [were] no longer received." Def.'s Resp. to Pl.'s Mot. for Summary J., 3. If plaintiffs can indeed show that, despite having resumed business at another location, they have been rendered unable to conduct any meaningful business whatsoever, and they have not been able to receive the benefits of their employees' services, this will qualify as an actual business loss. See Koken v. Lexington Ins. Co., No. 04-2539, 2006 WL 5377234 at *7 (E.D.Pa. Feb. 1, 2006) (noting that claimant had suffered an actual business loss from failure to receive the benefit of its employees' services at the time those employees were completely unable to access the

claimant's business facilities). However, under the terms of the policy, they must present evidence, in the form of financial records, bills, invoices, and other material, showing that they have indeed sustained such loss.

It appears that plaintiffs' intent in filing a motion for summary judgment in place of a motion for judgment on the pleadings was to bring to the Court's attention the affidavit of Edward Eidelman, in which he states that, as a result of the fire at 1284 Hamilton Street, Eidelman Crossley lost nearly everything required for it to successfully conduct business, including its files, computer server and equipment, emailing capabilities, calendars, books, and miscellaneous supplies. See Eidelman Affidavit. Though it may be true that plaintiffs are unable to conduct most of their business out of their temporary location, they are not entitled to the order they seek where the terms of their policy clearly and unequivocally provide that business income loss is to be determined by looking to net business income before and after the loss occurred. Under the terms of the policy and of the order State Farm asks this Court to enter, plaintiffs will have the chance to demonstrate, if they can, that they have indeed suffered a complete loss of business income.

### IV. CONCLUSION

For the reasons set forth above, I will grant State Farm's motion for judgment on the pleadings and attach an order substantially similar to the one it proposes.